UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.  CASE NO: 2:18-cr-206-FtM-38MRM

GUSTAVO RAMIREZ-CRUZ

## **OPINION AND ORDER**[1]

Before the Court is Defendant Gustavo Ramirez-Cruz's Motion to Dismiss Indictment filed on January 31, 2019. (Doc. 17). The United States filed a Response to Defendant's Motion to Dismiss Indictment on February 14, 2019. (Doc. 18). For the following reasons, Defendant's motion (Doc. 17) is denied.

## **BACKGROUND**

Ramirez-Cruz is a citizen of Mexico who illegally entered the United States near San Ysidro, California on or about November 1, 1999. (Doc. 18-1 at 1). Crucial here, on April 6, 2004, the United States Immigration and Naturalization Service issued a Notice to Appear ("NTA") initiating removal proceedings against Ramirez-Cruz under the Immigration and Nationality Act. (*Id.*). The NTA alleged Ramirez-Cruz was subject to removal and ordered him to appear before an immigration judge at 3260 N. Pinal Parkway Avenue, Florence, Arizona 85232. (*Id.*). However, in the blanks provided for a date and

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

time of his hearing, the supervisory special agent simply wrote on "a date to be set" and at "a time to be set." (*Id.*). The record shows Defendant personally received service of the NTA and elected to waive his right to a 10-day period prior to appearing before an immigration judge. (*Id.* at 2). Moreover, the NTA indicates that Defendant received oral notice of the NTA in Spanish and signed and pressed a stamp of his right index finger on the form. (*Id.*). Ramirez-Cruz also elected not to request a redetermination of his detention status by an immigration judge. (Doc. 18-2).

Six days after receiving his initial NTA, on April 12, 2004, Ramirez-Cruz received a second notice. (Doc. 18-4). This advised Defendant that the immigration court scheduled his master hearing for 9:00 a.m. at 3260 North Pinal Parkway, Florence, Arizona 85232 on April 12, 2004. (*Id.*). The next day, Defendant received a third notice, which informed him that the immigration re-scheduled his master hearing to take place on April 15, 2004, at the same time and location. (Doc. 18-5). Defendant's removal hearing took place on April 15, 2004, and an immigration judge denied his application for voluntary departure and ordered him removed to Mexico. (Doc. 18-6 at 1). The judge found Ramirez-Cruz waived his right to appeal. (*Id.*). In accordance with the judge's decision, Defendant was removed from the United States that same day. (Doc. 18-7).

After being deported, Defendant re-entered the United States at an unknown time and location. (Doc. 18-8). The United States Department of Homeland Security ("Homeland Security") issued a Notice of Intent/Decision to Reinstate Prior Order on July 3, 2012. (*Id.*). Defendant, through counsel, moved to stay his removal, but his application was denied on August 22, 2012. (Docs. 18-10; 18-11). Ramirez-Cruz was again removed from the United States on September 5, 2012. (Doc. 18-12). Then, on November 22,

2018, Ramirez-Cruz "was found to be voluntarily in the United States without "the consent of the Attorney General or the Secretary of Homeland Security." (Doc. 1 at 1). On that same day, Homeland Security executed a Notice of Intent/Decision to Reinstate Ramirez-Cruz's prior removal order. (Doc. 18-13). On December 6, 2018, a federal grand jury returned a one count Indictment against Ramirez-Cruz for illegally reentering the United States in violation of 8 U.S.C. §1326(a). (Doc. 1).

Ramirez-Cruz moves to dismiss the Indictment on two intertwined grounds. First, he relies on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) to argue that his deportation order cannot serve as the basis for this case. Because the NTA failed to specify the date and time of his removal hearing, he argues jurisdiction never vested with the immigration court. Second, Ramirez-Cruz maintains the lack of a date and time on the NTA subjects his deportation to collateral attack under 8 U.S.C. § 1326(d). For the following reasons, the Court finds (1) the defects in Ramirez-Cruz's NTA did not deprive the immigration court of jurisdiction to order his removal; and (2) Defendant cannot satisfy the elements necessary for a collateral attack.

## STANDARD OF REVIEW

An "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal

citation omitted). A "district court [must] dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983).

## DISCUSSION

As stated, Ramirez-Cruz offers two theories to dismiss the Indictment: (1) the immigration court did not have subject matter jurisdiction because he received a defective NTA; and (2) the Indictment should be dismissed per the factors permitting a collateral attack on a deportation order in 8 U.S.C. § 1326(d). (Doc. 17 at 1-10). Critical to both arguments is the Supreme Court's recent decision in *Pereira*, 138 S. Ct. 2105. In that case, the Court considered the following narrow question: "Does a notice to appear that does not specify the time and place at which the proceedings will be held, as required by 8 U.S.C. § 1229(a)(1)(G)(i), trigger the stop-time rule" used to determine whether illegal immigrants are eligible to cancel their removal proceedings. *Id.* at 2110. The Court held that such notices are not true "notices to appear" as defined by 8 U.S.C. § 1229(a)(1), and thus do not trigger the stop-time rule. *Pereira*, 138 S. Ct. at 2113-14.

The Court's holding rested on a plain reading of 8 U.S.C. § 1229(a)(1), which required noncitizens facing removal proceedings to receive a "notice to appear," and defined a "notice to appear" as a "written notice." *Id.* The "written notice" must include, among other things, the "time and place at which the proceedings will be held." *Id.* The Court stated "common sense compels the conclusion" that if the "three words notice to appear mean anything . . . that must mean that, at a minimum, the Government has to provide noncitizens notice of the information, *i.e.*, the time and place that would enable them to appear at the removal hearing." *Id.* at 2115 (internal quotation marks omitted).

Ramirez-Cruz and the Government dispute whether *Pereira* applies beyond the stop-time rule, where, like here, the underlying notice to appear served on a noncitizen fails to specify the time and date of the removal proceedings. The Court starts with Ramirez-Cruz's arguments.

**A. Immigration Court's Subject Matter Jurisdiction over Ramirez-Cruz's Removal**

Ramirez-Cruz first argues this Court should dismiss his Indictment because he received a defective notice to appear under *Pereira*, which prevented subject matter jurisdiction from vesting with the immigration court. He maintains that a removal proceeding commences, and subject matter jurisdiction vests with the immigration court, upon the filing of a charging document, such as a notice to appear, which *Pereira* and 8 U.S.C. § 1229(a) establish must contain the date and time of removal proceedings. Where a notice to appear fails to include the time and date of removal proceedings, he argues that it does not qualify as a charging document. And without jurisdiction, he argues the immigration court's original removal order is invalid. The Government responds that Defendant takes too broad a view of *Pereira* because the decision does not suggest that the failure to specify the date and time of removal proceedings voids removal. The Court agrees with the Government.

The Supreme Court's holding in *Pereira* addressed a narrow issue of statutory interpretation: whether an NTA that omitted the time and place of an initial removal hearing triggered the stop-time rule for eligibility to cancel a removal proceeding. *Pereira*, 138 S. Ct. at 2110. Defendant asks this Court to extend the narrow ruling in *Pereira* to find that an immigration court lacks subjects matter jurisdiction over an illegal alien if an NTA presented fails to state the time and date of the hearing. The Court

declines to interpret *Pereira* so broadly, especially because the Supreme Court (1) did not invalidate the alien's underlying removal proceedings and (2) never addressed whether jurisdiction existed in that case. See *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315 (6th Cir. 2018) (finding it significant that *Pereira* "did not purport to invalidate the alien's underlying removal proceedings or suggest the proceedings should be terminated" and that the Supreme Court "took up, decided, and remanded *Pereira* without even hinting at the possibility of a jurisdictional flaw") (internal citations and quotations omitted); *see also Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018) (noting *Pereira* is to be read narrowly).

Neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. Rather, federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction. In particular, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." Such charging document may include an NTA. See 8 C.F.R. § 1003.13.

Also, 8 C.F.R. § 1003.15(b)-(c) enumerates particular items that must be included in an NTA. The regulation requires that a notice to appear include:

(1) The nature of the proceedings against the alien;

(2) The legal authority under which the proceedings are conducted;

(3) The acts or conduct alleged to be in violation of law;

(4) The charges against the alien and the statutory provisions alleged to have been violated;

(5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authority to appear pursuant to 8 C.F.R. 12921;

(6) The address of the Immigration Court where the Service will file . . . the Notice to Appear; and

(7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an absentia hearing in accordance with § 1003.26.

8 C.F.R. § 1003.15(b). Additionally, 8 C.F.R. § 1003.15(c) requires that a NTA include:

(1) The alien's names and any know aliases;

(2) The alien's address;

(3) The alien's registration number, with any lead alien registration number with which the alien is associated;

(4) The alien's alleged nationality and citizenship; and

(5) The language that the alien understands.

Notably, the date and time of the removal proceedings is not among the above criteria.

Finally, 8 C.F.R. § 1003.18(b) states that an NTA must include "the time, place and date of the initial removal hearing, where practicable." Upon review of the above regulations, it is not essential that the date and time of the removal proceedings be included in the NTA for jurisdiction. Instead, this information need only be included "where practicable." *See* 8 C.F.R. § 1003.18(b). Moreover, 8 U.S.C. § 1229(a)(1), and its requirements regarding a NTA, is not mentioned within the above federal regulations to confer subject matter jurisdiction.

Although the regulations mandate what is required in an NTA filed with the immigration court to confer jurisdiction, *Pereira* and 8 U.S.C. § 1229(a)(1) address what information must be included in an NTA "given . . . to the alien" or his counsel. Considering the above, the Court, like other district courts, finds that the regulations, such as 8 C.F.R. §§ 1003.14, 1003.15, and 1003.18, not *Pereira* and 8 U.S.C. § 1229(a)(1), set forth the standard for conferring jurisdiction upon the immigration court. *See United States v. Ramos-Delcid*, No. 3:18-CR-20, 2018 WL 5833081, at *3 (W.D. Va. Nov. 7, 2018); *United States v. Saravia-Chavez*, No. 3:18-CR-00016, 2018 WL 5974302, at *4 (W.D. Va. Nov. 14, 2018); *United States v. Cortez*, No. 6:18-CR-22, 2018 WL 6004689, at *3 (W.D. Va. Nov. 15, 2018); *United States v. Romero-Caceres,* No. 1:18-CR-354, 2018 WL 6059381, at *7 (E.D. Va. Nov. 19, 2018); *United States v. Torres-Medina,* No. 5:17-CR-281-1H, 2018 WL 6345350, at *4 (E.D. N.C. Dec. 4, 2018); *United States v. Duarte,* No. 4:18CR3083, 2018 WL 6493090, at *4 (D. Neb. Nov. 30, 2018), report and recommendation adopted, No. 4:18CR3083, 2018 WL 6492750 (D. Neb. Dec. 10, 2018); *United States v. Rivera Lopez*, No. 1:18-CR-00381, 2018 WL 6834363, at *5 (E.D. Va. Dec. 28, 2018); *United States v. Gonzalez-Leal*, No. 5:18-CR-275-FL-1, 2019 WL 310145, at *4 (E.D. N.C. Jan. 3, 2019), report and recommendation adopted, No. 5:18-CR-275-FL-1, 2019 WL 302495 (E.D. N.C. Jan. 22, 2019).

Turning to this case, Ramirez-Cruz does not allege that the NTA filed with the immigration court failed to satisfy 8 C.F.R. §§ 1003.15(b) and (c) and 1003.18(b). Consequently, Defendant's motion to dismiss the Indictment is denied to the extent that it is based on the immigration court's lack of subject matter jurisdiction over his removal proceedings.

**B. Ramirez-Cruz's Collateral Attack Under 8 U.S.C. § 1326(d)**

Intertwined with Defendant's jurisdictional argument is his collateral attack under 8 U.S.C. § 1326(d). Relying on *Pereira*, Ramirez-Cruz argues that because his NTA did not include a hearing date and time, his resulting deportation is defective. (Doc. 17 at 3-10). The Government asserts Defendant has failed to satisfy all three requirements for a collateral attack. (Doc. 18 at 9-12). The Court agrees with the Government.

A defendant may collaterally attack his deportation order where his order is necessary to establish an element of the charged illegal reentry offense. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) (stating a review of deportation proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"). Under 8 U.S.C. § 1326(d), a defendant bringing a collateral attack against an underlying deportation order must show (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review; and (3) the entry of the order was "fundamentally unfair." The Court addresses each element below.

Defendant argues he should be excused from exhausting his administrative remedies because, under *Pereira*, the immigration court lacked jurisdiction and thus his removal order is void. (Doc. 17 at 7-9). The Government responds that Ramirez-Cruz has not exhausted his administrative remedies because he did not contest the jurisdiction of the immigration judge based upon defects in his NTA. (Doc. 18 at 9).

9

The Court has already rejected Ramirez-Cruz's argument that his removal order is void under *Pereira*. Thus, he is not excused on this ground. Moreover, Ramirez-Cruz fails to show he exhausted his administrative remedies for two reasons. First, he never challenged the jurisdiction of the immigration court based upon the lack of date and time in his initial notice. *See United States v. Rosa Imelda Garcia-Alvarez*, No. 2:18-cr-142-FtM-29CM at 6-7 (M.D. Fla. Oct. 30, 2018) (finding defendant was required to challenge the jurisdiction of the immigration judge based upon the lack of date and time in the initial NTA in order to collateral attack her removal order) (citing *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981); *United States Transp. Union v. Surface Transp. Bd.*, 114 F.3d 1242, 1244-45 (D.C. Cir. 1997); *Campos-Luna v. Lynch*, 643 F. App'x 540, 543 (6th Cir. 2016)). Second, the deportation order shows Ramirez-Cruz waived his right to appeal. (Docs. 17-3; 18-6 at 1). "If an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under 1326(d)(1)." *United States v. Tamayo-Baez*, 820 F.3d 308, 313 (8th Cir. 2016) (quoting *United States v. Cerna*, 603 F.3d 32, 39 (2d Cir. 2010)); *see also United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005)). Defendant neither contends his waiver was made unknowingly or involuntarily, nor does the record indicate he made an uninformed waiver. Ramirez-Cruz has thus failed to prove the first required element for collaterally attacking his immigration order.

Next, Ramirez-Cruz argues he was deprived of an opportunity for judicial review because the immigration court did not have jurisdiction to enter his removal order. (Doc. 17 at 8). The Court, however, already rejected this argument. In any event, the Court

finds the deficiencies in the initial NTA did not constitute a due process violation because Defendant has not shown that the NTA deprived him of an opportunity to be heard. Despite the deficiencies in the initial NTA, Defendant had notice of the charges against him, received notice six days later of the date and time of his removal hearing, and does not dispute he attended his hearing. *See United States v. Saravia-Chavez*, 349 F. Supp. 3d 526, 535 (W.D. Va. 2018) (finding defendant did not suffer a due process violation when the record showed he received notice and attended his removal hearing despite deficiencies in his initial NTA); *see also United States v. Gonzalez-Leal*, No. 5:18-CR-275-FL-1, 2019 WL 310145, at *6 (E.D.N.C. Jan. 3, 2019), report and recommendation adopted, No. 5:18-CR-275-FL-1, 2019 WL 302495 (E.D.N.C. Jan. 22, 2019) (holding defendant could not show his initial NTA deprived him of an opportunity to be heard since he was present at the hearing and had notice of the charges against him). Accordingly, Ramirez-Cruz fails to show he was deprived of an opportunity for judicial review.

Lastly, Defendant maintains the entry of his removal order was fundamentally unfair because jurisdiction did not vest with the immigration court under *Pereira* and thus his removal is void. The Government argues any defects in Defendant's initial NTA was cured by subsequent notices that notified him of the date and time of his hearing. The Government is correct.

"[F]undamental unfairness requires a showing that specific errors prejudiced the defendant. The prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing." *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir. 1989) (citations omitted). "An alien characterizing a deportation as fundamentally unfair must, at a

minimum, demonstrate that the outcome of the deportation proceeding would have been different but for a particular error." *United States v. Zelaya*, 293 F.3d 1294, 1298 (citing *Holland*, 876 F.2d at 1537)).

Apart from the jurisdictional arguments this Court already rejected, Defendant does not argue he suffered any other prejudice. In any event, even if the initial NTA failed to vest jurisdiction, there were two subsequent notices to appear setting a hearing in Florence, Arizona which did specify a date and time. (Docs. 18-4; 18-5). Because these two notices were issued prior to Defendant's order of removal, the immigration judge had jurisdiction to issue the removal order. *See Rosa Imelda Garcia-Alvarez*, 2:18-cr-142-FtM-29CM at 6. Thus, "[a]ny defect in the initial notice was cured by the time of the removal order by serving the subsequent notices of hearing." *Id.* (citing *Popa v. Holder*, 571 F.3d 890, 895-96 (9th Cir. 2009)). Furthermore, Defendant fails to show how the lack of a date and time in his initial NTA resulted in his actual prejudice. Specifically, Defendant has not demonstrated that but for the omission of the time and date of his removal hearing, he would not have been deported. Consequently, the Court finds the removal order was not fundamentally unfair.

In short, the Court finds the Indictment states all elements of the charge of illegal reentry in violation of 8 U.S.C. § 1326(a) and Ramirez-Cruz's collateral attack must be denied.

Accordingly, it is now

**ORDERED:**

(1) Defendant Gustavo Ramirez-Cruz's Motion to Dismiss Indictment (Doc. 17) is
    **DENIED**.

(2) Defendant remains set for a status conference before the undersigned on **March 11, 2019**.

**DONE AND ORDERED** at Fort Myers, Florida, this February 27, 2019.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record